UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

CHAUDHRY AKHTAR ALI,

                                    Plaintiff,

        v.                                                    Case No.

NAVEED GHULAM,
NAHEED GHULAM,
IMRAN GHULAM,
DILAWER HUSSAIN,
NIA BUILDERS, INC., and
NINA'S CHICKEN FARMHOUSE,

                                    Defendants.

## COMPLAINT

### Introductory and Jurisdictional Statement

1.      Plaintiff Chaudhry Ali, a citizen of Pakistan and resident of Virginia, brings this action against Defendants Naveed Ghulam, Naheed Ghulam, Imran Ghulam, Dilawer Hussain, NIA Builders, Inc., and Nina's Chicken Farmhouse (individually or collectively, "Defendants") for damages resulting from breach of contract, false imprisonment, violations of minimum-wage and overtime laws, human trafficking, and forced labor in the United States.

2.      The Defendants, owners and agents of a successful architectural firm in Triangle, Virginia, recruited Mr. Ali, a man of modest means and former owner of his own plant nursery in Pakistan, to start a plant nursery business as their joint partner in the United States. They enticed Mr. Ali to come to the United States (where growing plants is more profitable than in Pakistan)

with an agreement that he would work for the couple building the nursery up while they helped him obtain an employment visa.

3.      Mr. Ali was told by the Defendants that he would be provided lawful compensation and working conditions in the United States. Hoping to give his family a better life in Pakistan, Mr. Ali accepted the offer, agreed to work for the defendants, sold his plant nursery in Pakistan, and obtained a 5-year visitor visa to come to the United States.

4.      Mr. Ali never received the promised compensation or working conditions running a plant nursery. Instead, he was forced to work around the clock at the Defendants' chicken houses in Delaware (Nina's Chicken Farmhouse).

5.      The Defendants employed Mr. Ali in a position titled "Assistant Electrician," forced Mr. Ali to work long hours, waking up in the middle of the night to tend to the chickens and machinery, confiscated the $10,000.00 he brought with him in savings to the U.S., and held him in forced labor, paying him next to nothing for his unending work.

6.      The Defendants also limited his ability to leave the farm, communicate with other people, and threatened him not to report any wrongdoings or he would be arrested. The Defendants coerced and manipulated Mr. Ali into staying and working at the chicken farm for almost 21 months and prevented him from accessing resources that would have allowed him to become acquainted with his rights as an employee in the U.S. or to leave the chicken farm.

7.      This case arises under the federal Trafficking Victims Protection Act, 18 U.S.C. §§1584 *et seq*., and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq*.. This Court has jurisdiction over the trafficking claims under 18 U.S.C. §1596, as the Defendants are present in the Virginia. The Court has jurisdiction over the FLSA claims under 28 U.S.C. § 1331 as well as 29 U.S.C. § 216. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, as these claims are so related to the federal claims that they form part of the

same case or controversy. Venue is proper for this Court pursuant to 28 U.S.C. § 1391 and Local Civil Rule 3(C) as Defendants reside in this district and division and/or a substantial part of the events or omissions giving rise to this lawsuit have taken place in this division in the Eastern District of Virginia. Each Defendant is subject to personal jurisdiction in the Commonwealth of Virginia. Each Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over each Defendant to comply with traditional notions of fair play and substantial justice.

## Parties

8.      Plaintiff Chaudhry Ali is a citizen of Pakistan who currently resides in Springfield, Virginia. He has 22 years of experience in running his own plant nursery and technical diplomas from Pakistan, but was never a member of the wealthy upper class in Pakistan. He is accustomed to "knowing his place" within the middle class of the traditional Pakistani social hierarchy, and was not able to confront the wealthy and powerful Defendants without assistance. At all times relevant, Plaintiff was an "employee" of the Defendants as defined in the FLSA.

9.      Defendant Naveed Ghulam is believed to be a citizen of the United States and a resident of Triangle, Virginia. He is the owner of a successful architecture firm, NIA Builders, Inc., in Triangle, Virginia, as well as Nina's Chicken Farmhouse. He is viewed as a wealthy and powerful man back in Pakistan. He is married to Defendant Naheed Ghulam and is the Father of Defendant Imran Ghulam. He recruited Mr. Ali to come to the United States to partner with him in a plant nursery business, directed Mr. Ali's work at the chicken farm, and frequently visited the chicken farm to check in on the business and bring the farm workers food and supplies. He received numerous complaints from Mr. Ali about his working conditions and failure to conform

to their employment agreement. At all times relevant, this Defendant was and is an "employer" as defined in the FLSA.

10.     At all relevant times, Defendant Naveed Ghulam acted directly or indirectly on behalf of NIA Builders and the other Defendants, and, at all times mentioned herein was an "employer" or "joint employer" of Plaintiff within the meaning of the FLSA. He exerted operational and management control over Plaintiff's work, including day to day management. He was, and is, frequently present at NIA Builders and Nina's Chicken Farmhouse, owned, directed, controlled, and managed the operations at NIA Builders and Nina's Chicken Farmhouse. He also controlled the nature, pay structure, and employment relationship of Plaintiff. This Defendant has had, at all times relevant to this lawsuit, the authority to hire and fire employees, the authority to direct and supervise the work of employees, the authority to sign on the business' checking accounts, including payroll accounts, and the authority to make decisions regarding employee compensation and capital expenditures. Additionally, he was responsible for the day-to-day affairs of NIA Builders and Nina's Chicken Farmhouse. He was responsible for determining whether Defendants complied with the FLSA.

11.     Defendant Naheed Ghulam is believed to be a citizen of the United States and is a resident of Triangle, Virginia. She is the wife of Naveed Ghulam and the mother of Imran Ghulam. She directed Mr. Ali's work at the chicken farm and frequently visited the chicken farm to check in on the business and bring the farm workers food and supplies. At all times relevant, this Defendant was and is an "employer" as defined in the FLSA.

12.     At all relevant times, Defendant Naheed Ghulam acted directly or indirectly on behalf of NIA Builders and the other Defendants, and, at all times mentioned herein was an "employer" or "joint employer" of Plaintiff within the meaning of the FLSA. She exerted operational and management control over Plaintiff's work, including day to day management.

She was, and is, frequently present at NIA Builders and Nina's Chicken Farmhouse, owned, directed, controlled, and managed the operations at NIA Builders and Nina's Chicken Farmhouse. She also controlled the nature, pay structure, and employment relationship of Plaintiff. This Defendant has had, at all times relevant to this lawsuit, the authority to hire and fire employees, the authority to direct and supervise the work of employees, the authority to sign on the business' checking accounts, including payroll accounts, and the authority to make decisions regarding employee compensation and capital expenditures. Additionally, she was responsible for the day-to-day affairs of NIA Builders and Nina's Chicken Farmhouse. She was responsible for determining whether Defendants complied with the FLSA.

13.     Defendant Imran Ghulam is believed to be a citizen of the United States and a resident of Triangle, Virginia. He is the son of Defendants Naveed and Naheed Ghulam. He is believed to be part owner of Nina's Chicken Farmhouse, periodically lived and worked at the chicken farm, and directed Mr. Ali's work there. At all times relevant, this Defendant was and is an "employer" as defined in the FLSA.

14.     At all times relevant, Defendant Imran Ghulam acted directly or indirectly on behalf of NIA Builders and the other Defendants, and, at all times mentioned herein was an "employer" or "joint employer" of Plaintiff within the meaning of the FLSA. He exerted operational and management control over Plaintiff's work, including day to day management. He was, and is, frequently present at NIA Builders and Nina's Chicken Farmhouse, owned, directed, controlled, and managed the operations at NIA Builders and Nina's Chicken Farmhouse. He also controlled the nature, pay structure, and employment relationship of Plaintiff. This Defendant has had, at all times relevant to this lawsuit, the authority to hire and fire employees, the authority to direct and supervise the work of employees, the authority to sign on the business' checking accounts, including payroll accounts, and the authority to make decisions regarding

employee compensation and capital expenditures. Additionally, he was responsible for the day-to-day affairs of NIA Builders and Nina's Chicken Farmhouse. He was responsible for determining whether Defendants complied with the FLSA.

15.     Defendant Dilawer Hussain is believed to be a citizen of the United States and a resident of Falls Church, Virginia. He is a common acquaintance of the other Defendants and Plaintiff. He recruited Mr. Ali to come to the United States to partner with Defendants in a plant nursery business at the other Defendants' request, picked Mr. Ali up from the airport upon his arrival in the United States, and transported Mr. Ali from Virginia to the Defendants' chicken farm in Delaware.  At all relevant times, he acted as an agent of Defendants in recruiting and transporting Mr. Ali for the purposes of his forced labor.

16.     At all relevant times, Defendant Dilawer Hussain acted directly or indirectly on behalf of NIA Builders and the other Defendants, and, at all times mentioned herein was an "employer" or "joint employer" of Plaintiff within the meaning of the FLSA. He exerted control over recruiting, promising pay, making representations to recruit Plaintiff, and transporting Plaintiff to the other Defendants for their benefit for the purposes of putting Plaintiff into forced labor. He also controlled and played an integral part in establishing the employment relationship of Plaintiff with Defendants and played an integral role in implementing Defendants' scheme to put Plaintiff into forced labor. As with the other Defendants, he was responsible for determining whether Defendants complied with the FLSA.

17.     Defendant NIA Builders, Inc., a Virginia corporation, is an architecture firm owned by the individual Defendants with its principal office located at: 18740 Full Heights Road, Triangle, Virginia 22172. Mr. Ali was paid via a check written from the NIA Builders, Inc. account for his work at Nina's Chicken Farmhouse, which is also owned by the individual

Defendants. At all times relevant, this Defendant was and is an "employer" as defined in the FLSA.

18.     Defendant Nina's Chicken Farmhouse is a chicken farm specializing in raising chickens for sale with Perdue Chicken- a company that distributes its chicken all throughout the United States- owned by Defendants. It is located at 12537 N Union Church Road, Ellendale, Delaware 19941. The Farmhouse is believed to be a joint venture between two separate entities, both owned by Defendants. At all times relevant, this Defendant was and is an "employer" as defined in the FLSA.

19.     The Defendants are wealthy, influential business owners and representatives of the Pakistani upper class who hold traditional classist attitudes towards their perceived social inferiors from Pakistan.

20.     At all times relevant, Defendants employed Plaintiff within the meaning of the FLSA.

21.     At all times relevant, Defendants exercised control over the terms and conditions of the employment of Plaintiff.

22.     Plaintiff is informed, believes, and thereon alleges that Defendants' gross annual sales made or business done is $500,000.00 or greater. Defendants operate in interstate commerce by, among other things, buying and/or selling goods and/or transacting business in multiple states, and/or by having employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce in multiple states. Defendants' employees, including Plaintiff, were engaged in commerce and/or the production of goods for commerce.

23.     Plaintiff is informed and believes that, at all relevant times herein, Defendants engaged in the acts alleged herein and/or condoned, permitted, authorized, and/or ratified the

conduct of their employees and agents, and the other Defendants, and are vicariously or strictly liable for the wrongful conduct of Defendants' employees and agents as alleged herein.

24.    Plaintiff is informed and believes, and on that basis alleges that, each of the Defendants acted, in all respects pertinent to this action, as the agent or employee of each other, and carried out a joint scheme, business plan, or policy in all respects thereto and, therefore, the acts of each of these Defendants are legally attributable to the other Defendants, and that these Defendants, in all respects, acted as employers and/or joint employers of Plaintiff in that each of them exercised control over Plaintiff's wage payments and control over Plaintiff's duties.

25.    Plaintiff is informed and believes, and on that basis alleges that, at all relevant times, each and every Defendant has been the agent, employee, representative, servant, master, employer, owner, agent, joint venture, and alter ego of each of the other and each was acting within the course and scope of his or her ownership, agency, service, joint venture, and employment.

26.    At all times mentioned herein, each and every Defendant was the successor of the other and each assumes the responsibility for the acts and omissions of all other Defendants.

### Claim for Relief

### Background

27.    <u>M</u>r. Ali was born in Malakand, Pakistan on November 2, 1967. He comes from, and throughout his life has remained in, middle-class financial circumstances. He received two technical diplomas (one 2-year and one 1-year technical diploma) and a 4-year diploma in homeopathic medicine in Pakistan, and opened his own plant nursery in Islamabad, Pakistan in 1994.

28.    Mr. Ali was married to his wife, Zohra Jabin, in 1991. He and his wife have 2 sons and 2 daughters, born in 1993, 1995, 1998, and 2000. He also provides for his elderly father

who has diabetes and lives in his family home, as well as his children who are studying at University in Pakistan. His wife is unemployed and he is the sole provider for the family.

### Recruitment

29.      A common acquaintance of the Defendants and Mr. Ali, Dilawer Hussain, recruited Mr. Ali to come to the United States to work for Defendants at Naveed Ghulam's request. Mr. Ali was ensured that he would work as a joint owner of a plant nursery that he was to cultivate on Defendants' farmland in exchange for payment for his employment visa and pay in accordance with U.S. laws.

30.      After Mr. Hussain convinced Mr. Ali to work with Defendants in the U.S., Mr. Ali sold his plant nursery in Islamabad, Pakistan, obtained a visitor visa to the U.S., and wrapped up his life in Pakistan to prepare for his work in the U.S.

31.      Mr. Ali was in need of lucrative employment to support his family, especially his ailing father and university-aged children, so notwithstanding his unhappiness at leaving his family, he agreed to come to the U.S. to provide his family with the much-needed and promised funds.

32.      At all relevant times, it was the intent of the Defendants to secure Mr. Ali's labor in order to run their chicken farmhouses in Delaware, where they knew that he would be isolated and incapable of securing support and assistance to understand and vindicate his rights. Specifically, Defendants sought to and did procure Mr. Ali's services, under false pretenses, to run and manage their chicken farm business (including being on-call at all hours of the day and night to fix machinery, tend to the chickens, maintain the premises, order the feed, cook the employees' meals, clean the farmhouse, and ensure the successful operation of the Defendants' chicken farmhouses), and to do so at little-to-no cost to themselves.

33.     Mr. Ali made his own arrangements for travel to Virginia and arrived in Virginia

October 21, 2017. He stayed with Mr. Hussain (who had been expecting him) in Falls Church,

Virginia, before Mr. Hussain took him to the chicken farmhouse in Delaware on October 26,

2017 (where Defendants were expecting Mr. Ali to begin his work in the chicken houses).

34.     Mr. Ali understood that he was to work building up a nursery on the Delaware

farmland for a short time while his visa was secured, and subsequently become part-owner

running the nursery. Defendants did not mention anything about chicken houses or raising

chickens to Mr. Ali when they recruited him or after he arrived in the U.S. Mr. Ali only

discovered that he was to be working in the chicken houses upon his arrival in Delaware on

October 26, 2017.

35.     Defendants signed a contract with Mr. Ali and the Department of Homeland

Security that he would be paid $3,200.00 per month for 40 hours of work per week when they

applied for Mr. Ali's work permit in or around February or March 2018. Defendants should have

a copy of that contract in their records. Defendants recruited Mr. Ali with a job posting

confirming that Defendant NIA Builders, Inc. was an employer of Mr. Ali. Defendants employed

Mr. Ali as an "Assistant Electrician" and reported the same to Department of Homeland

Security.

36.     Mr. Ali was not permitted to leave the Delaware chicken farm until he was

unexpectedly told to leave the premises by Defendants on July 16, 2019.

**Mr. Ali's Work**

37.     For the next 21 months, Mr. Ali was responsible for running and maintaining all

eight chicken houses on the Nina Chicken Farmhouse property. This included fixing the

machinery in the chicken houses, tending to the chickens' every need, maintaining and cleaning

the premises, administering medicine to the chickens, ordering the feed for the chickens, cooking

the employees' meals, cleaning the farmhouse, and ensuring the successful operation of the chicken houses. Apart from his routine duties, he also attended to any and every other task assigned by Defendants regardless of the time of day or night it was demanded of him. He remained on call 24 hours a day for the entire 21 months.

38.     Defendants regularly traveled from Virginia to Delaware multiple times per month to check on the farm and its employees and bring food to Mr. Ali since he was not able or permitted to leave the farm premises. Defendants' adult son, Imran, also lived and worked on the Delaware farm property for months at a time and directed Mr. Ali's work while there.

39.     Mr. Ali was able to build his own starter nursery on the chicken farm property, but Defendant Naveed bulldozed it when he claimed that Mr. Ali was spending too much time caring for the plants and not his chickens. This was devastating to Mr. Ali, who had spent his time and effort over many months to cultivate those plants.

40.     During the first week of Mr. Ali working at the Defendants' chicken farm in October 2017, Defendant Naveed Ghulam lived on the premises in order to make sure that the farm operation started running smoothly and successfully. Within this first week, Defendant Naveed confiscated Mr. Ali's passport and the $10,000.00 in savings he brought with him from Pakistan. Defendant Naveed did not return Mr. Ali's passport to him until about year and a half into Mr. Ali's work at the farm when Mr. Ali received his work permit from the government and Defendants had confidence that Mr. Ali would not flee the premises. The $10,000.00 that Defendant Naveed confiscated from Mr. Ali was never returned to him.

41.     Mr. Ali satisfactorily performed all the terms of his employment agreement and later contract with Defendants.

**Mr. Ali's Hours**

42.     Mr. Ali was permanently on call, 24 hours/day, seven days/week, 52 weeks/year.

43.     At the direction all Defendants, Mr. Ali worked incessantly seven days a week for almost 21 months until Defendants unexpectedly told him to leave the farm premises on July 16, 2019. While working at the farm, Mr. Ali was woken up multiple times per night most nights by alarms from the machinery or phone calls from the Defendants demanding that he attend to something on the farm.

44.     Mr. Ali typically worked for Defendants 12-14 hours per day or more, seven days per week. Defendants required, suffered, or permitted him to work these long hours.

45.     Upon his arrival in Delaware on October 26, 2017, and learning that he had to work at the chicken houses, Mr. Ali asked why he was working in chicken houses rather than building a nursery as promised. Naveed responded that Mr. Ali needed to work in the chicken houses until the nursery could become profitable, and that he could only work on the nursery after he was done with his work with the chickens for the day.

46.     After having worked for the Defendants in the manner described above for approximately eight months without pay, Mr. Ali inquired of Naveed why the terms of his contract were not being adhered to. Naveed responded that he spent too much money on Mr. Ali's immigration fees, and thus did not need to pay him. When Mr. Ali eventually started to cry, Naveed finally remitted a $5,000.00 check to Mr. Ali (from the NIA Builders, Inc. bank account). After that, Mr. Ali was only paid small amounts of money sporadically and not on a regular basis by Defendants, despite the fact that the other employees on the farm were paid weekly.

47.     Defendants did not permit Mr. Ali to take any days off from work- sick or otherwise- unless there were no chickens in the houses or other tasks to be done to prepare for the next batch of chicks.

48.     Defendants also did not allow Mr. Ali to go to mass to pray, despite the fact that he is a practicing Muslim, and only occasionally gave him time off for holidays.

49.     With the exception of approximately five days during his entire tenure working for Defendants, Mr. Ali was not permitted to take off for holidays, weekends, vacation, sick leave, or to attend the mosque as he had regularly done in Pakistan. The exception was when he was permitted a few hours off to celebrate one Eid or when there were no chicks to prepare the farm for. Defendants were aware of Mr. Ali's religion as a practicing Muslim (as they are themselves) but would not permit him to go to the mosque to pray.

50.     When Mr. Ali was severely assaulted by another employee of the farm and admitted to the hospital for seven days (after the police took him there- not Defendants), Defendants required Mr. Ali to ask the doctors to be discharged early and to go back to work immediately upon his discharge despite the fact that he was still feeling unwell. Mr. Ali was also only able to go to the dentist one time during his work tenure with the Defendants due to an extreme tooth infection, but was not permitted to go for any follow-up appointments.

51.     During the course of his servitude and other than his mandatory hospital stay, Mr. Ali was not taken to the doctor, nor permitted to see the doctor or hospital for follow-up visits after the assault.

## Mr. Ali's Living Conditions

52.     Mr. Ali's living conditions imposed upon him by the Defendants were contemptable.  He lived in an unfinished garage without any windows, closet, or proper bed. He slept on an air mattress on a concrete floor and had little-to-no privacy, since the other farm employees would take off their dirty farm clothes and leave them in the garage overnight before putting the clothes back on in the morning.

53.     As a result of being overworked and sleep-deprived without proper medical attention, Mr. Ali experienced tooth aches, back aches, and issues with his diabetes because

Defendants would not allow Mr. Ali to go to the doctor to be prescribed his proper diabetes medicine.

### Mr. Ali's Isolation

54.     Mr. Ali was not permitted to leave the farm premises or to converse with other individuals who lived in the area. Defendants informed him that if he spoke to anyone about his situation, that he would get in trouble and be arrested because he was working in the country illegally.

55.     Defendants did not acquaint Mr. Ali with his rights as an employee or resident of the U.S., or how he might exercise them. To the contrary, having isolated him on a remote farm in Delaware without any friends or family, they successfully intimidated him into acquiescing in his apparent fate. Mr. Ali feared legal difficulties, including arrest, if he left his position or complained about his working condition to anyone, as Defendants advised him.

56.     Mr. Ali spoke with his family approximately once per week by using Wifi in the farmhouse, however Mr. Ali never told his family of the troubles he was facing working for the Defendants as he did not want to worry them.

57.     Mr. Ali did not have the tools or assistance to object effectively to his mistreatment. He believed that if he complained of such matters to the police in Pakistan, the authorities would have believed the Defendants instead of him. He thought this was true in the United States as well, and was also intimidated by the fact that Defendants told him he would be thrown in jail if he were to complain about his work situation to anyone else.

58.     Mr. Ali did not know anyone in the United States other than Defendants and their mutual acquaintance, Mr. Hussain, whom he learned he could not trust. He was denied any opportunity to meet new people or integrate into the community.

### Defendants' Threats

59.     Mr. Ali asked Defendants approximately three times to quit the job and return home to Pakistan throughout his time working for Defendants. Mr. Ali made these requests beginning approximately four months into working for Defendants and also after the assault occurred. Despite the fact that Mr. Ali repeatedly declared his intent to return to Pakistan, he had no way to arrange this himself.

60.     Incapable of striking out on his own, and because of Defendants' refusal to provide him arrangements to return home despite his pleas, unable to receive assistance from his family, intimidated by the threats made against him were he to leave, having no one else to turn to for assistance, Mr. Ali could do nothing to extricate himself from his situation and the Delaware farm.  Defendants exploited Mr. Ali's lack of knowledge about life, laws, and procedures in the United States, and intimidated him into remaining in involuntary servitude to their benefit until they told him to leave the premises in July 2019.

### Mr. Ali's Compensation

61.     Mr. Ali anticipated being paid $3,200.00 per month for up to forty hours of work per week. However, Defendants did not pay him accordingly.

62.     At all relevant times, Defendants, as sophisticated businesspeople with ongoing businesses, had knowledge of the federal wage laws, including minimum wage and overtime laws.

63.     Mr. Ali routinely complained that he was not being paid as promised. After repeatedly begging to be paid for his work and breaking down in tears, Defendants remitted a mere $5,000.00 to Mr. Ali for over six months of work. They then paid him small amounts of money (ranging from $100 to $1,000) with no regularity or consistency in the amount he was paid.

64.     For his almost 21 months of work for Defendants, Mr. Ali was paid a total approximately $12,000, plus room and board. His total compensation was significantly less than what he was entitled to receive even as a matter of the federal minimum wage of $7.25/hour, and certainly less than he was entitled to receive under the contract he signed with Defendants.

65.     Defendants posted no notices regarding the FLSA, minimum wage, or other workers' rights laws as required by law, nor otherwise informed Mr. Ali of his rights as a worker in the United States. They knowingly kept Mr. Ali unaware of his rights, including his right to minimum wages and overtime compensation pursuant to the FLSA. Mr. Ali learned about such things only following his consultation with an attorney long after he left the Delaware chicken farm and fled to Virginia.

66.     On information and belief, Defendants failed to keep hour and wage records and to pay federal and state taxes on the wages paid to Mr. Ali, all as required by law. At all relevant times Mr. Ali was ignorant of such matters and kept ignorant of them by Defendants.

67.     At all relevant times, Defendants were Mr. Ali's employers and he was their employee within the meaning of the FLSA. All defendants had actual knowledge of their obligation to pay Mr. Ali in accordance with the governing contract and with the applicable law for all time he was working or on call for work — which was 24 hours/day. Their failure to pay Mr. Ali as agreed and as required by law was knowing, willful, and not done in good faith, manifesting their disregard of Mr. Ali's dignity and rights under law.

68.     During the entire period of Mr. Ali's involuntary servitude and isolation by Defendants as set forth above, Defendants knowingly and deliberately kept Mr. Ali ignorant of his rights under law, including his right to proper pay and freedom to leave the farm premises in Delaware. It was only following his unexpected termination and later consultation with an

attorney that he first learned he had rights under United States law to have been paid pursuant to his contract and in accordance with the minimal standards set by United States law, as well as recourse for having been held against his will at the Delaware farm.

69.     The FLSA requires employers to "post and keep posted a notice explaining the [FLSA]... in conspicuous places." 29 C.F.R. § 516.4.

70.     Defendants' failure to post and keep posted in a conspicuous place the required information about employee FLSA rights entitles Plaintiff to equitable tolling of the statute of limitations for FLSA claims. *See Cruz v. Maypa*, 773 F.3d 138, 146-47 (4th Cir. 2014) (tolling FLSA statute of limitations for 6 years due to "the plaintiff's employer's failure to post statutory notice of workers' rights" under the FLSA); *Kim v. Lee,* No. 1:18-CV-1350, 2019 WL 8892575, at *3 (E.D. Va. Apr. 15, 2019) (discussing *Cruz*; equitable tolling where Defendants did not post the FLSA notice).

71.     Defendants willfully violated the FLSA by not paying Plaintiff minimum wages and overtime compensation to which he was entitled.

72.     At all relevant times Defendants intended to deprive Plaintiff of the minimum wages and overtime pay to which he was entitled to under the FLSA, or acted with reckless disregard for his rights under the FLSA.

73.     At all relevant times Defendants knowingly failed to pay Plaintiff the minimum wages and overtime pay to which he was entitled to under the FLSA.

74.     Mr. Ali now lives safely and securely in Northern Virginia.

75.     As a result of the Defendants' actions complained of herein, Mr. Ali has suffered physical and emotional injury and distress and considerable economic losses for his unpaid wages.

76.     The conduct of Defendants as alleged herein was willful, wanton, malicious, and oppressive, entitling Plaintiff to an award of exemplary and punitive damages in an amount sufficient to deter future similar conduct by Defendants and their agents and others in the future.

## Causes of Action

### Count I

### Trafficking For Purposes of Forced Labor in Violation of 18 U.S.C. §1590

77.     As set forth above, Defendants knowingly recruited Mr. Ali in Pakistan and encouraged him to obtain a visa to travel to the United States for the purpose of subjecting him to forced labor in violation of 18 U.S.C. 1590. Pursuant to 18 U.S.C. §1595, Defendants are liable to him for his resulting damages.

### Count II

### Forced Labor in Violation of 18 U.S.C. §1589

78.     As set forth above, Defendants knowingly provided and obtained Mr. Ali's forced labor to their financial benefit by force, threats of force, serious harm, and threatened abuse of legal process, all in violation of 18 U.S.C. § 1589. Pursuant to 18 U.S.C. §1595, Defendants are liable to him for his resulting damages.

### Count III

### Unlawful Confiscation of Travel Documents in Violation of 18 U.S.C. § 1592(a)

79.     As set forth above, Defendants knowingly confiscated Mr. Ali's passport while violating his rights as a trafficked person under 22 U.S.C. §7102(11)(B), in violation of his rights under 18 U.S.C. §1592(a). Pursuant to 18 U.S.C. §1595, Defendants are liable to him for his resulting damages.

## Count IV

### Involuntary Servitude in Violation of 18 U.S.C. §1584

80.     As set forth above, Defendants knowingly and willfully held Mr. Ali in a state of

involuntary servitude for 21 months in the United States, in violation of 18 U.S.C. §1584.

Pursuant to 18 U.S.C. § 1595, Defendants are liable to him for his resulting damages.

## Count V

### Benefitting Financially from Trafficking in Violation of 18 U.S.C. §1593A

81.     As set forth above, Defendants knowingly benefitted by engaging in the

trafficking and peonage of Mr. Ali within the meaning of 18 U.S.C. §1593A, and are liable to

him for his resulting damages under 18 U.S.C. §1595.

## Count VI

### Conspiracy to Violate the Trafficking Victims Protection Act

82.     In violation of 18 U.S.C. §1594(b), as set forth above each Defendant conspired

with the other Defendants to violate the above referenced sections of the Trafficking Victims

Protection Act with regard to Mr. Ali, and each Defendant committed the overt acts in

furtherance of this conspiracy ascribed to them as set forth above. Defendants are liable to Mr.

Ali for his resulting damages pursuant to 18 U.S.C. §1595.

## Count VII

### Unpaid Wages in Violation of FLSA, 29 U.S.C. § 206 (Minimum Wage Violations)

83.     As set forth above, on average, Defendants failed to pay Mr. Ali in accordance

with the requirements of the FLSA. From October 26, 2017, to July 16, 2019, Mr. Ali worked a

total of approximately 21 months for Defendants. He is entitled to his earnings pursuant to the

FLSA for having been permanently at work or on call for work, including minimum wages and

overtime compensation for his time in excess of 40 hours / week, plus the same amount in liquidated damages.

84.     At all times relevant herein, each Defendant has been, and continues to be, an "employer," and Plaintiff has been an "employee" within the meaning of 29 U.S.C. §§ 203(d) and (e).

85.     The FLSA requires covered employers, such as Defendants, to compensate all non-exempt employees at a minimum wage rate of not less than $7.25 per hour. 29 U.S.C. § 206. As such, Plaintiff is entitled to a minimum wage of $7.25 per hour for all work performed for Defendants.

86.     By failing to compensate Plaintiff with at least minimum wages for all time worked, Defendants have violated the FLSA.

87.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

88.     Plaintiff is entitled to equitable tolling due to Defendants' failure to "post and keep posted a notice explaining the [FLSA]... in conspicuous places." 29 C.F.R. § 516.4.

89.     Plaintiff seeks damages in the amount of unpaid minimum wages, an equal amount as liquidated damages, interest, all costs and attorneys' fees incurred in investigating and prosecuting this action, all other relief available under the FLSA, and all other such legal and equitable relief as the Court deems just and proper.

## Count VIII

### Unpaid Wages in Violation of FLSA, 29 U.S.C. § 207 (Overtime Violations)

90.     At all times relevant herein, each Defendant has been, and continues to be, an "employer," and Plaintiff has been an "employee" within the meaning of 29 U.S.C. §§ 203(d) and (e).

91.     The FLSA requires covered employers, such as Defendants, to compensate all non-exempt employees at a rate not less than one and one-half times their regular rate of pay for work performed in excess of forty hours per week. 29 U.S.C. § 207. As such, Plaintiff is entitled to overtime compensation at one and one-half times his regular rate of pay for work performed in excess of forty hours per week.

92.     By failing to compensate Plaintiff with overtime compensation at one and one-half times his regular rate of pay for all work he performed in excess of forty hours per week, Defendants have violated the FLSA.

93.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

94.     Plaintiff is entitled to equitable tolling due to Defendants' failure to "post and keep posted a notice explaining the [FLSA]... in conspicuous places." 29 C.F.R. § 516.4.

95.     Plaintiff seeks damages in the amount of unpaid overtime wages, an equal amount as liquidated damages, interest, all costs and attorneys' fees incurred in investigating and prosecuting this action, all other relief available under the FLSA, and all other such legal and equitable relief as the Court deems just and proper.

## Count IX (Alternative A)

## Breach of Contract

96.     As set forth above, Defendants failed to pay Mr. Ali in accordance with his contract calling for payment for 40 hours/week at $3,200.00 per month, notwithstanding that he was employed full time and on call 24/7 for almost 21 months. He is entitled to damages in the amount of his contractual entitlement, approximately $67,200.

## Count IX (Alternative B)

### *Quantum Meruit*

97.     As set forth above, as compensation for his work for Defendants, Mr. Ali was paid much less than the law or his underlying contract required, and also far less than the value of his services as a permanently available servant running their business and doing their bidding in another state. If and to the extent that it is found that Mr. Ali lacks a contract claim against Defendants or any of them, Mr. Ali is entitled to the fair value of his work in an amount equal to at least his entitlement to back-pay under his contract claim. This claim is pleaded in the alternative to Mr. Ali's contract claim, in the event that claim fails as a matter of law.

### Claim X

### Unjust Enrichment

98.     As set forth above, all Defendants profited greatly by Mr. Ali's services over a period of almost 21 months. Mr. Ali provided numerous benefits upon all Defendants, who had knowledge and appreciation of these benefits and accepted them under circumstances making it inequitable for them to retain these benefits without payment of their value, fairly measured by Mr. Ali's entitlement to back pay under his contract.

### Count XI

### False Imprisonment

99.     By their actions set forth above, Defendants falsely imprisoned Mr. Ali for a period of almost 21 months.

### Count XII

### Conspiracy

90. By their actions set forth above, Defendants conspired among themselves to cause the false imprisonment of Mr. Ali.

***

Wherefore, Mr. Ali requests an order of the Court granting him the following relief against Defendants, individually or jointly and severally as the Court may order:

A. A preliminary and permanent injunction barring Defendants and any persons acting in concert with them from conspiring, or engaging in any sort of retaliation, against Mr. Ali or members of his family;

B. Unpaid minimum wages and overtime compensation pursuant to the FLSA in an amount appropriate to the proof at trial, for the period of his servitude to Defendants;

C. Liquidated damages in the amount of his unpaid minimum wages and overtime compensation pursuant to the FLSA;

D. Compensatory damages appropriate to the proof at trial for Defendants' violations of his rights under the Trafficking Victims Protection Act, including but not limited to restitution for the full value of his services to Defendants calculated pursuant to 18 U.S.C. §1593(b);

E. Damages for breach of contract, or alternatively, in *quantum meruit* for the fair value of his services in an amount appropriate to the proof at trial, for the period going back 21 months before he was released from his imprisonment;

F. Compensation for unjust enrichment in an amount commensurate with the benefits conferred upon Defendants by his services;

G. His actual damages appropriate to the proof at trial for Defendants' false imprisonment of him for almost 21 months;

H.  Punitive damages against all Defendants appropriate to the proof at trial for their

violation of the Trafficking Victims Protection Act and for false imprisonment;

I.  Pre-judgment, as well as post-judgment interest;

J.  His costs, including reasonable attorneys' fees; and

K.  Such other relief as is proper.

### **Demand for Jury Trial**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a jury trial for all

claims and issues so triable.

Respectfully submitted,

CHAUDHRY AKHTAR ALI,

By counsel

Dated: July 15, 2022


Counsel for Plaintiff:


//s// Alexandra M. Lydon
Alexandra M. Lydon (VSB #90122)
Legal Services of Northern Virginia
100 N Pitt Street, #307
Alexandria, VA 22314
Phone: 703.504.9155
Fax: 571.386.0641
alydon@lsnv.org

/s/Timothy Coffield
Timothy Coffield (VSB #83430)
COFFIELD PLC
106-F Melbourne Park Circle
Charlottesville, VA 22901
P: (434) 218-3133
F: (434) 321-1636
tc@coffieldlaw.com
Counsel for Plaintiff