UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

CHAUDHRY AKHTAR ALI,

Plaintiff,

v.                                              Case No. 1:22-cv-00799-PTG-WEF

NAVEED GHULAM,
NAHEED GHULAM,
IMRAN GHULAM,
DILAWER HUSSAIN,
NIA BUILDERS, INC.,
NNT AGRI SYSTEMS, LLC,
ISG POULTRY,
NINA'S CHICKEN FARMHOUSE, and
DOES 1-10,

Defendants.

**MEMORANDUM IN SUPPORT OF JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT**

Plaintiff CHAUDHRY ALI and Defendants NAVEED GHULAM, NAHEED GHULAM, IMRAN GHULAM, DILAWER HUSSAIN, NIA BUILDERS, INC., NNT AGRI SYSTEMS, LLC, ISG POULTRY, NINA'S CHICKEN FARMHOUSE (collectively "Parties") jointly move the Court for an order approving the agreement between the Parties to resolve this case and dismissing Plaintiff's Complaint with prejudice. A true and accurate copy of Plaintiff's proposed Settlement Agreement is attached hereto as Exhibit 1. For the following reasons, the settlement is fair and equitable, and properly considers the risks and uncertainties the parties would face should the case not settle.

1

I.    **INTRODUCTION**

In this case, which involves human trafficking claims under the Trafficking Victim's Protection Act ("TVPA") as well as claims Fair Labor Standards Act ("FLSA"), and related state law claims, all arising from Plaintiff's alleged human trafficking and forced labor by Defendants, Plaintiff and Defendants jointly request that the Court enter an Order approving the settlement reached between the Parties in resolution of a bona fide dispute regarding Plaintiff's entitlement to damages under the FLSA, the TVPA, related state laws, and Defendants' denial of the same, and dismissing Plaintiff's claims with prejudice while maintaining jurisdiction to enforce the terms of the settlement agreement. The parties have negotiated a settlement in this action, and they have agreed to resolve the disputed factual and legal issues on the terms set forth in the Settlement Agreement.

The parties seek Court approval of their Settlement Agreement because claims under the FLSA, like those settled and released by Plaintiff in the Settlement Agreement, may not be waived without Department of Labor or court approval. 29 U.S.C. § 216(b) and (c); *Taylor v. Progress Energy, Inc.*, 415 F.3d 364, 371 (4th Cir. 2005) ("The rights guaranteed by the FLSA cannot be waived or settled without prior DOL or court approval."); *Lynn's Food Stores v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982) (accord). Upon examination of the Settlement Agreement ("Settlement Agreement"), the Court will find that the Settlement Agreement is fair and should be approved. The Settlement Agreement reflects reasonable compromises of issues actually in dispute, the settlement was reached in an adversarial context in which all Parties were represented by competent and experienced counsel, and the totality of the proposed settlements are fair and reasonable.

II.     **PROCEDURAL HISTORY**

On July 15, 2022, Plaintiff filed this action, seeking to recover damages for violations of the human trafficking provisions of the VVPA, for unpaid minimum wage and overtime wages, liquidated damages, and attorneys' fees pursuant to the Fair Labor Standards Act, as well as damages for breach of contract and related state law claims, all in the context of his alleged human trafficking and forced labor at a chicken farm operated by certain Defendants. (DN 1.) On October 28, 2022, Defendants filed an Answer denying the claims. (DN 17.) On March 16, 2023, Plaintiff filed an Amended Complaint asserting the same claims and adding additional Defendants that were believed to be owned and operated by the existing Defendants. (DN 28.)

The Parties exchanged in formal written discovery, exchanging documents, communications, damages calculation information, and other information to relating to Plaintiff's alleged human trafficking and forced labor at the chicken farm between October 2017 and July 2019, to apprise themselves of the full scope of available facts and to thereby engage in full and complete settlement discussions regarding the allegations.

On April 3, 2023, the Parties attended a day-long settlement conference with Judge Fitzpatrick culminating in the proposed settlement of all claims. (Docket Entry dated April 3, 2023.) The terms of the settlement were subsequently memorialized in writing.  The Parties drafted and agreed to the terms contained in the attached Settlement Agreement, which has been executed by all Parties. The Parties now file a Joint Motion to Approve Settlement Agreement, which is accompanied by a Proposed Order and this Memorandum of Law in Support of the Motion.

III.    **THE PARTIES' LITIGATION POSITIONS AND PERTINENT SETTLEMENT TERMS**

This case arises under the federal Trafficking Victims Protection Act, 18 U.S.C. §§1584 et seq., and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, et seq., and related state law

claims. Plaintiff Chaudhry Ali is a citizen of Pakistan and a resident of Virginia. He alleges violations by Defendants of minimum-wage and overtime laws, human trafficking, and forced labor in the United States.

Plaintiff alleges that Defendants are owners and agents of a successful architectural firm in Triangle, Virginia, that owned and operated a chicken farm in Ellendale, Delaware (Nina's Chicken Farmhouse, in addition to multiple other entities and LLCs). Plaintiff alleges that Defendants recruited him to start a plant nursery business as their joint partner in the United States. Plaintiff alleges Defendants recruited him to come to the United States with an agreement that he would work for them building the nursery up on a large plot of land that they own while they helped him obtain an employment visa, and thereafter would work as a joint owner of the nursery with them.

Plaintiff alleges he never received the promised compensation or working conditions running a plant nursery. Instead, Plaintiff alleges Defendants forced Plaintiff to work long hours and held him in forced labor.

Plaintiff sought compensatory damages under the TVPA and related state law claims. Plaintiff further sought damages for unpaid minimum and overtime wages under the FLSA, and unpaid contractual wages. Plaintiff also sought liquidated damages under the FLSA. Plaintiff also sought costs and attorney fees.

Because Plaintiff's FLSA claims were filed with (at most) only a few days remaining in the maximum three-year lookback period, Plaintiff's FLSA claims largely depended on Plaintiff prevailing on an equitable tolling argument to extend the limitations period. Plaintiff sought equitable tolling on his FLSA claims going back to the beginning of his stay at Defendants' chicken

farm in October 2017, on the basis that Defendants allegedly failed to post the required notice of FLSA rights.

Defendants denied the human trafficking claims under the TVPA and denied all the other claims. Defendants denied that Plaintiff was ever their employee under the FLSA, and generally denied that he did FLSA-compensable work for them. Defendants denied that they owed Plaintiff any money. Defendants asserted that even if Plaintiff was an employee under the FLSA, his claims were almost entirely filed out of time (given the three-year maximum lookback period under 29 U.S.C. § 255). Defendants further denied that Plaintiff was entitled to equitable tolling and denied that they failed to post the required notice of FLSA rights. Defendants further asserted that even if Plaintiff was entitled to wages under the FLSA, Defendants were entitled to credit towards those wages for the room and board that they provided to him at the chicken farm.

Defendants argued that Plaintiff was not entitled to liquidated damages under the FLSA. Defendants asserted that they always acted reasonably and in good faith, and with reasonable grounds to believe that their actions did not violate the FLSA. Defendants further asserted that even if Plaintiff was an "employee" of them under the FLSA, which they denied, Plaintiff was not entitled to equitable tolling because he had notice of his FLSA rights from required postings.

If a jury agreed with Defendants on the equitable tolling theory, Plaintiff would have at most only a few days of damages under the FLSA.

According to Plaintiff's damages model, if Plaintiff had prevailed on his equitable tolling claim and the jury found for Plaintiff on the other FLSA issues, including hours worked, he would have been entitled to approximately $120,712.50 in unpaid minimum wages ($63,945.00) and overtime wages ($56,767.50) over a roughly 21-month period, based on his anticipated testimony that he worked 14-hour days and using the $7.25 minimum wage as the regular rate of pay.

Additionally, Plaintiff would have been entitled to liquidated (double) damages under the FLSA unless Defendants proved that the alleged violations were in good faith. *See* 29 U.S.C. § 260. On his best day at trial under the FLSA, using the 14-hour day damages model, and not taking into account the (likely substantial) offset that Defendants would be entitled to for room and board under 29 U.S.C. 203(m)(1), he would have received approximately $120,712.50 plus an equal amount as liquidated damages under the FLSA. Estimating the value of room and board conservatively at $1,000 per month for 21 months would reduce the unpaid FLSA to approximately $99,712.50 ($120,712.50 - $21,000 credit).

If, alternatively, a jury agreed with Defendants, Plaintiff would have no damages, and would potentially have to pay the costs of an unsuccessful litigation, making him worse off financially than if he had not filed suit.

During the course of discovery and settlement discussions, Plaintiff produced to Defendants his damages model, both sides responded to interrogatories and produced relevant documents, and the Parties discussed the facts and law bearing on Plaintiff's TVPA, FLSA, and related state law claims.

The Parties recognize the risks to both sides presented by continued litigation and decided to control the outcome of the case by entering into the Settlement Agreement. The Parties also recognize that, in addition to the uncertainty of continued litigation in this matter, the expenses attendant to further litigation and trial would be significant for all Parties involved.

Under the Settlement Agreement, Defendants will pay the gross settlement amount specified in the Settlement Agreement, which is inclusive of attorneys' fees and costs. The Settlement Agreement is broken down into different payments allocated to Plaintiff and his counsel. The Settlement Agreement further contains a mutual general release.

6

## IV.   <u>THE COURT SHOULD APPROVE THE SETTLEMENT AGREEMENT</u>

The Court should approve the Settlement Agreement because the settlement is the product of contested litigation, the parties are represented by competent and experienced counsel, and the Settlement Agreement reflects a reasonable compromise over disputed issues. The Settlement Agreement's provisions are fair and reasonable in light of the disputed issues.

As the Court noted in *LaFleur v. Dollar Tree Stores, Inc.,* "[i]in determining whether a settlement is 'fair, adequate, and reasonable' there is a 'strong presumption in favor of finding a settlement fair' that must be kept in mind in considering the various factors to be reviewed." 189 F. Supp. 3d 588, 593 (E.D. Va. 2016) (internal citations omitted). When evaluating whether to approve a settlement agreement, the Court may consider the following factors:

(1)   the extent of discovery that has taken place;

(2)   the stage of the proceedings, including the complexity, expense and likely duration of the litigation;

(3)   the absence of fraud or collusion in the settlement;

(4)   the experience of counsel who have represented the Plaintiff;

(5)   the probability of Plaintiff's success on the merits and

(6)   the amount of the settlement in relation to the potential recovery.

*Id.*

The Parties reached this settlement after engaging in fairly extensive written discovery, including exchange of interrogatories, documents, and damages calculations, to allow them to engage in full and complete settlement discussions regarding the allegations.  Had the matter proceeded to the trial, the Parties anticipate that these materials would have been central to the case. By settling this matter before engaging in additional discovery and depositions, the Parties saved significant litigation expenses. While Plaintiff believed he had a reasonable probability of

success on the merits, based on his evidence and anticipated testimony, Defendants believed that they had a reasonable probability of success on the merits as well, based on their evidence and defenses.

The total amount of the settlement is $75,000. After deduction of attorney fees and costs, the total amount of the settlement going to Plaintiff is $59,960.01

The settlement payment to Plaintiff greatly exceeds the outcome ($0, minus litigation costs) he would have received on his minimum wage and overtime claims had Defendants prevailed in the case.

The Settlement Agreement provides for payments to Plaintiff's counsel for alleged attorney's fees and costs in the total amount of $15,039.99. As of the filing of this brief, Plaintiff's counsel has expended more than approximately 215 hours (122 Lydon, 93 Coffield) in preparing, litigating, briefing, resolving this case. Plaintiff's counsel anticipates that their reasonable hourly rate in this case would be $400 (Lydon) and $500 (Coffield) respectively, based on the Vienna Metro Matrix. The amount paid to Plaintiff's counsel for alleged attorney's fees and costs in this settlement therefore represents a substantial discount on counsel's estimated fees if calculated on an hourly basis to date ($95,300) and offers an even greater discount below what could have been awarded on a fees motion had the case been litigated and resulted in an adjudicated judgment for Plaintiff.

A thorough review of the Settlement Agreement will reveal that the settlement is fair, adequate, and reasonable. Plaintiff was represented by counsel experienced in FLSA litigation who protected the rights of their clients during the negotiations. The settlement reflects a reasonable compromise regarding bona fide disputes between the parties regarding the questions of liability

and the amount of alleged damages under the FLSA. The settlement was the result of arms-length negotiations through a day-long settlement conference with Judge Fitzpatrick.

Further, the Parties both agree that the settlement is fair, just, and adequate to settle Plaintiff's claims.  The endorsement of the Settlement Agreement by counsel for both Parties is a "factor that weighs in favor of approval" of an FLSA settlement agreement because "counsel for each side possess[es] the unique ability to assess the potential risks and rewards of litigation." *Quintanella v. A&R Demolition, Inc.*, No. 04-cv-1965, 2008 U.S. Dist. LEXIS 37449, at * 14 (S.D. Tex. May 7, 2008).  Here, Plaintiff's counsel is fully aware of the factual contentions of the Parties and is in the best position to opine as to whether this settlement produces fair results for Plaintiff after consideration of risks. Plaintiff made an educated decision to agree to the terms of his settlement. Plaintiff and Plaintiff's counsel have concluded that a settlement with Defendants on the terms set forth in the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Plaintiff.

## V.   CONCLUSION

For these reasons, the Parties respectfully request that this Court approve the proposed Settlement Agreement in this matter, attached as Exhibit 1. The Parties further respectfully request that, should the Court approve the Settlement Agreement, it also enter an order dismissing this action with prejudice, while maintaining jurisdiction to enforce the terms of the Settlement Agreement.

Dated:  June 2, 2023

**Respectfully submitted,**

**CHAUDHRY ALI**

/s/ Alexandra M. Lydon
Alexandra M. Lydon (VSB #90122)
Legal Services of Northern Virginia
100 N Pitt Street, #307
Alexandria, VA 22314
Phone: 703.504.9155
Fax: 571.386.0641
alydon@lsnv.org

/s/Timothy Coffield
Timothy Coffield (VSB #83430)
COFFIELD PLC
106-F Melbourne Park Circle
Charlottesville, VA 22901
P: (434) 218-3133
F: (434) 321-1636
tc@coffieldlaw.com
Counsel for Plaintiff

**NAVEED GHULAM, NAHEED GHULAM, IMRAN GHULAM, DILAWER HUSSAIN, NIA BUILDERS, INC., NNT AGRI SYSTEMS, LLC, ISG POULTRY, and NINA'S CHICKEN FARMHOUSE**

    /s/ Christopher Robertson
J. Chapman Petersen, VSB #37225
Christopher Robertson, VSB #93732
Chap Petersen & Associates, PLC
3970 Chain Bridge
Fairfax, VA 22030
Telephone: (571) 459-2512
Facsimile: (571) 459-2307
jcp@petersenfirm.com
cr@petersenfirm.com
Counsel for Defendants

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 2, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.


<u>/s/ Christopher Robertson</u>
Counsel for PlaintiffDefendants

11